1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                        **WESTERN DIVISION**

11

12   BETTY SARMIENTO,              )      No. CV 05-8948 (CW)
                                   )
13              Plaintiff,         )      DECISION AND ORDER
            v.                     )
14                                 )
     JO ANNE B. BARNHART,          )
15   Commissioner, Social Security )
     Administration,               )
16                                 )
                Defendant.         )
17   _____)

18

19       The parties have consented, under 28 U.S.C. § 636(c), to the

20   jurisdiction of the undersigned magistrate judge.  Plaintiff seeks

21   review of the denial of disability benefits.  The court finds that

22   judgment should be granted in favor of defendant, affirming the

23   Commissioner's decision.

24                        **I.   BACKGROUND**

25       Plaintiff Betty Sarmiento was born on September 2, 1953, and was

26   fifty-two years old at the time of her latest administrative hearing.

27   [Administrative Record, "AR," 64, 294.]  She has an eighth grade

28   education and past relevant work experience as a sales attendant and

                                1

cleaner. [AR 15.]  Plaintiff alleges disability on the basis of
hepatitis, back and knee pain, carpal tunnel syndrome and anxiety.

## II.  **PROCEEDINGS IN THIS COURT**

Plaintiff's complaint was lodged on December 27, 2005, and filed
on December 30, 2005.  On June 30, 2006, defendant filed an answer and
plaintiff's Administrative Record ("AR").  On September 7, 2006, the
parties filed their Joint Stipulation ("JS") identifying matters not
in dispute, issues in dispute, the positions of the parties, and the
relief sought by each party.  This matter has been taken under
submission without oral argument.

## III.  **PRIOR ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed a protective application for supplemental
security income ("SSI") on April 15, 2003, alleging disability since
February 1, 1999.  [JS 2, AR 64.]  An administrative hearing was held
on October 13, 2004, before Administrative Law Judge ("ALJ") Zane
Lang. [Transcript, AR 290.]  The hearing was continued because
plaintiff did not appear. [AR 293.]  A second hearing was held on
March 17, 2005, before ALJ Lang. [AR 294.]  Plaintiff appeared with
counsel, and testimony was taken from plaintiff and vocational expert
Sandra Trost. [Id.]  The ALJ denied benefits in a decision dated April
29, 2005.  [Decision, AR 25.]  When the Appeals Council denied review
on November 7, 2005, the ALJ's decision became the Commissioner's
final decision. [AR 5.]

## IV.  **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the
Commissioner's decision to deny benefits.  The Commissioner's (or
ALJ's) findings and decision should be upheld if they are free of
legal error and supported by substantial evidence.  However, if the

1  court determines that a finding is based on legal error or is not

2  supported by substantial evidence in the record, the court may reject

3  the finding and set aside the decision to deny benefits.  See Aukland

4  v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v.

5  Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240

6  F.3d 1157, 1162 (9th Cir.  2001); Tackett v. Apfel, 180 F.3d 1094,

7  1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

8  1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada

9  v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

10      "Substantial evidence is more than a scintilla, but less than a

11  preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence

12  which a reasonable person might accept as adequate to support a

13  conclusion."  Id.  To determine whether substantial evidence supports

14  a finding, a court must review the administrative record as a whole,

15  "weighing both the evidence that supports and the evidence that

16  detracts from the Commissioner's conclusion."  Id.  "If the evidence

17  can reasonably support either affirming or reversing," the reviewing

18  court "may not substitute its judgment" for that of the Commissioner.

19  Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

20                          **V.   DISCUSSION**

21      **A.   THE FIVE-STEP EVALUATION**

22      To be eligible for disability benefits a claimant must

23  demonstrate a medically determinable impairment which prevents the

24  claimant from engaging in substantial gainful activity and which is

25  expected to result in death or to last for a continuous period of at

26  least twelve months.  Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at

27  721; 42 U.S.C. § 423(d)(1)(A).

28      Disability claims are evaluated using a five-step test:

                                  3

Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288.  If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1]  Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v.

4

1  education, and work experience, a claimant can perform other work

2  which is available in significant numbers. Tackett, 180 F.3d at 1098,

3  1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

4       **B.   THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

5       Here, the ALJ conducted two separate sequential evaluations:  one

6  that took into account plaintiff's substance abuse and one that

7  excluded it.[2] [AR 17.]  In the sequential evaluation where plaintiff's

8  substance abuse was included, the ALJ found that plaintiff had not

9  engaged in substantial gainful activity since her alleged disability

10 onset date (step one); that plaintiff had "severe" impairments, namely

11 alcohol and substance abuse, depression, anxiety and obesity (step

12 two); and that plaintiff did not have an impairment or combination of

13 impairments that met or equaled a "listing" (step three). [AR 18-19.]

14 However, because plaintiff's substance abuse treatment required her to

15 attend several daily sessions, she was found incapable of attending a

16 forty-hour workweek and, thus, was considered disabled. [AR 19.]

17      In the second evaluation, which excluded plaintiff's substance

18

19 Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155
   n.7; 20 C.F.R. § 404.1569a(c).  Pain may be either an exertional or a
20 nonexertional limitation.  Penny, 2 F.3d at 959; Perminter v. Heckler,
   765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).
21

22      [2]   A disability claimant is not eligible to receive benefits if
   drug or alcohol addiction is a "contributing factor material to the
23 determination of disability."  20 C.F.R. §§ 404.1535(a), 416.935(a).
   The key factor in determining whether alcoholism or drug addiction is
24 a "contributing factor material to the determination of disability" is
   whether an individual would still be found disabled if he or she
25 stopped using alcohol or drugs.  Sousa v. Callahan, 143 F.3d 1240,
   1245 (9th Cir. 1998); 20 C.F.R. §404.1535(b)(1), 416.935(b)(1).  In
26 the Ninth Circuit, such a determination must be made only after the
   ALJ has found the plaintiff "disabled" under the sequential
27 evaluation.  Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir.
   2001)(citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir.
28 2001)).

abuse, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date (step one); that plaintiff had "severe" impairments, namely alcohol and substance abuse, depression, anxiety and obesity (step two); and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 20.]  The ALJ found plaintiff had an RFC for a significant range of light work, but not her past relevant work (step four). [AR 21-22.]  The ALJ adopted the opinion of the vocational expert, who testified that a person with plaintiff's limitations could perform "other work" in the national economy, such as a call-out operator or photo counter clerk (step five). [AR 23.] Accordingly, plaintiff was found not "disabled" as defined by the Social Security Act. [Id.]

### C.  ISSUES IN DISPUTE

The parties' Joint Stipulation identifies four disputed issues:

1.  Whether the ALJ properly considered the assessment of a state agency review physician;

2.  Whether the ALJ propounded a complete hypothetical question to the vocation expert;

3.  Whether the ALJ properly considered plaintiff's occupational base when compared with the Medical-Vocational Guidelines ("Grids"); and

4.  Whether the ALJ properly evaluated plaintiff's RFC. [JS 3.]

As discussed below, none of these issues mandates reversal of the Commissioner's decision.

### D.  ISSUE ONE: THE STATE AGENCY REVIEW PHYSICIAN'S ASSESSMENT

As one of her physicians observed, plaintiff has had a "rather stormy and tragic" psychiatric history, which includes suicide

6

attempts, domestic violence, several criminal arrests, and a longstanding problem with marijuana, heroin and cocaine. [AR 144-145.] In April 2003, plaintiff was hospitalized for three days for "aggressive[,] out of control behavior," during which she was placed in seclusion with restraints for threatening hospital staff and other patients. [AR 179, 185.]  At the time of admission, plaintiff tested positive for marijuana and cocaine. [AR 179.]  In October 2004, plaintiff failed to attend her first administrative hearing because she felt suicidal. [AR 292.]  In November 2004, plaintiff was hospitalized again, this time for suicidal ideations. [AR 277.]  At the time of admission, plaintiff tested positive for cocaine and complained of her "inability to 'change her life' in any meaningful way and her inability to deal with her drug issues in particular." [AR 278.]  Upon her release, however, plaintiff began living at Bridges, an adult residential facility in El Monte for "dually diagnosed" adults – those with both substance abuse and mental health issues. [AR 283.]  The Bridges program required plaintiff to do light chores and attend several daily group therapy sessions. [AR 308-09, 319-20.]  At the latest hearing, plaintiff agreed that Bridges was a "pretty good program" and that she was completely sober for the first time. [AR 309.]

    In between plaintiff's two hospitalizations, in November 2003, Dr. M. Mallare, a state agency review psychiatrist, assessed plaintiff's mental functional capacity based upon the existing psychiatric record. [AR 222-39.]  Dr. Mallare concluded that plaintiff's psychiatric disorders and substance abuse imposed a number of "moderate" limitations in mental functioning, including plaintiff's ability to understand, remember and carry out detailed instructions

7

and maintain attention and concentration for extended periods. [AR 236.]  Although the ALJ noted Dr. Mallare's assessment, he did not explicitly adopt or reject it. [AR 20.]  Instead, the ALJ concluded that, if substance abuse were excluded from his functional capacity assessment, plaintiff would have an RFC for a significant range of light work with a mental capacity for carrying out both simple and detailed instructions. [AR 22.]  Plaintiff argues that it was reversible error for the ALJ to fail to take into account Dr. Mallare's more restrictive assessment, citing Social Security Ruling ("SSR") 96-6p.[3] [JS 4.]  This argument is without merit.

First, it is noted that Dr. Mallare's assessment fails to offer an opinion as to what plaintiff's mental residual functional capacity would be in the absence of substance abuse.  Dr. Mallare's opinion that plaintiff would have some "moderate" limitations in mental functioning takes into account that plaintiff, at the time of the assessment, was still using drugs. [AR 222, 230.]  Nowhere does Dr. Mallare, nor any other medical source, state that these or any other limitations would remain if plaintiff were sober.  Such an evaluation would have been difficult because plaintiff's period of sobriety, as of the date of the ALJ's decision, was brief – three months as of the administrative hearing.  Accordingly, Dr. Mallare's assessment is of limited evidentiary value.

---

[3]  SSR 96-6p provides, in relevant part, that "[f]indings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review...Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions."  1996 WL 374180 at *1.

1    Second, even if the ALJ erred in failing to state the weight that

2    he accorded Dr. Mallare's opinion, the error was harmless because Dr.

3    Mallare's assessed limitations were included in hypothetical questions

4    posed to the vocational expert ("VE").   In particular, the ALJ asked

5    the VE whether a person who could not make detailed or completed

6    judgments nor carry out detailed instructions could still perform work

7    in the national economy, to which the VE replied that such a person

8    could work as a mail clerk, cafeteria attendant, and call-out

9    operator.[4] [AR 315-319.]   Thus, any error the ALJ may have made in

10   these circumstances does not mandate reversal because it was not

11   outcome-determinative.   See Mayes v. Massanari, 276 F.3d 453, 462 (9th

12   Cir. 2001)(claimant seeking remand must demonstrate that consideration

13   of the excluded evidence would have changed the outcome of the

14   administrative hearing); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th

15   Cir. 1989)("No principle of administrative law or common sense

16   requires us to remand a case in quest of a perfect opinion unless

17   there is reason to believe that the remand might lead to a different

18   result.")(citations omitted).   Accordingly, this claim does not

19   warrant reversal.

20   **E.   ISSUE TWO: THE HYPOTHETICAL QUESTIONS POSED TO THE VE**

21   Plaintiff contends that the hypothetical questions posed to the

22

23   [4]   Only the job of call-out operator remained performable after
     factoring in certain non-mental limitations, such as plaintiff's
     limited range of motion in her right upper extremity. [AR 317-319.]

24   However, the job of photo counter clerk should also be considered
     performable by a person with all of plaintiff's limitations, including

25   those assessed by Dr. Mallare:  although the VE testified that a
     person capable of following detailed instructions could perform the

26   job of photo counter clerk, it is likely that such a job could also be
     performed by a person without this capability, as the job of photo

27   counter clerk is less demanding than the job of call-out operator in
     terms of reasoning level, general learning ability, and verbal and

28   numerical aptitude. See DOT 237.367-014, 249.366-010.

VE were deficient because the ALJ failed to include plaintiff's "moderate" limitations in maintaining concentration, persistence or pace, as well as one to two regular episodes of decompensation, which were noted in Dr. Mallare's assessment. [JS 13.]  However, as plaintiff concedes in Issue One, the ALJ did not adopt these limitations because he neither accepted nor rejected Dr. Mallare's opinion.  Moreover, as noted above, a rejection of these limitations would have been appropriate because they were assessed without segregating the effects of plaintiff's substance abuse.  Accordingly, this claim is without merit.

**F.   ISSUE THREE: PLAINTIFF'S OCCUPATIONAL BASE UNDER THE GRIDS**

During the hearing, the VE testified that a person with plaintiff's limitations could work as a photo counter clerk, an unskilled occupation at the light exertional level that is available in 1,479 jobs locally and 55,298 nationally. [AR 319.]  See Dictionary of Occupational Titles ("DOT") 249.366-010.  Plaintiff contends that this is insufficient to establish that she can work at the light exertional level because the other job cited by the VE, call-out operator, is an unskilled sedentary occupation. [JS 17.]  See DOT 237.367-014.  According to plaintiff, the fact that the VE cited only one light job fails to establish she has an RFC for light work and, thus, her RFC is for sedentary work, which directs a finding of disability under Rule 201.09 of the Grids. [JS 17.]  This argument is without merit.

The Commissioner satisfies her step five burden by showing that a claimant can make a successful adjustment to "other work" that exists in significant numbers in the national economy.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520, 416.920.

10

"Work which exists in the national economy" means work which exists in significant numbers, in one or more occupations, either in the region where the claimant lives or in several regions of the country.  42 U.S.C.A. § 423(d)(2)(A); 20 C.F.R. §§ 404.1566, 416.966.  It is irrelevant for the purpose of this inquiry "whether such work exists in the immediate area in which [the claimant] lives, or whether a specific job vacancy existed..., or whether [the claimant] would be hired if he applied for work."  42 U.S.C.A. § 423(d)(2)(A).

     Under this standard, the ALJ has identified light work that exists in the national economy that plaintiff could do.  There are 1,479 local and 55,298 national jobs for the occupation of photo counter clerk.  These numbers are close to those that several courts have considered sufficient to constitute "significant numbers."  <u>See</u> <u>Moore v. Apfel</u>, 216 F.3d 864, 869-70 (9th Cir. 2001)(7,700 regional and 125,000 national jobs); <u>Moncada v. Chater</u>, 60 F.3d 521, 524 (9th Cir. 1995)(2,300 local and 64,000 national jobs); <u>Barker v. Sec. of Health and Human Servs.</u>, 882 F.2d 1474, 1478 (9th Cir. 1989)(1,266 local jobs).  Thus, the ALJ's step five finding was not erroneous.

          **G.   ISSUE FOUR: PLAINTIFF'S RFC**

     According to the ALJ's RFC assessment of plaintiff's exertional limitations, plaintiff could lift twenty pounds occasionally and ten pounds frequently; sit, stand or walk for six hours in an eight-hour workday; occasionally push and pull with the right upper extremity; occasionally handle with the right upper extremity; and should avoid even moderate exposure to fumes, odors and other irritants. [AR 24.] Plaintiff argues that this RFC is not restrictive enough because it fails to account for her recurrent knee problem, as documented by a September 2002 MRI which revealed muscle tears near the left knee. [JS

11

20, AR 174-75.]  The record fails to demonstrate, however, that plaintiff's knee has been a persistent problem or that her orthopedic surgeon administered any treatment to the knee.  Accordingly, the existing record is not inconsistent with the ALJ's determination. Plaintiff's allegation of a knee problem could have been properly evaluated by means of an orthopedic consultative examination, but plaintiff failed to show up for the examination, did not offer an explanation for her absence, and did not request rescheduling of the examination. [AR 264.]  See 20 C.F.R. §§ 404.1518(a), 416.918(a) ("If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you..., we may find that you are not disabled.") Although plaintiff alleges mental impairments – and failed to attend her first administrative hearing because she felt suicidal – nothing suggests that plaintiff's failure to cooperate with the examination was due to her mental impairments.  Under these circumstances, there is no grounds to revisit the ALJ's RFC determination.

## VI.  ORDERS

Accordingly, **IT IS ORDERED** that:

1.   The decision of the Commissioner is **AFFIRMED**.

2.   This action is **DISMISSED WITH PREJUDICE.**

3.   The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: September 18, 2006

_____/s/_____
CARLA M. WOEHRLE
United States Magistrate Judge